# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No._____

HTO HOLDINGS, INC., a Delaware corporation

    Plaintiff

v.

BRADLEY LEBSOCK, an individual;
DAVID WADE LEBSOCK, an individual;
BRANDON LEBSOCK, an individual;
L7 AG, LLC, a Colorado limited liability company;
L7 GRAIN, LLC, a Colorado limited liability company;
L7 HEMP, LLC, a Colorado limited liability company;
L7 EXTRACTORS LLC, a Colorado limited liability company;
L7 TRADING, LLC, a Colorado limited liability company; and
BOTANIX EQUITIES, LLC a New York limited liability company,
D/B/A LEBSOCK PHARMS

    Defendants

## COMPLAINT

Plaintiff HTO Holdings, Inc. ("HTO" or "Plaintiff"), by and through its attorneys, M. Gabriel McFarland of McFarland Litigation Partners, LLC, for its Complaint against Bradley Lebsock ("Brad"), David Wade Lebsock ("David"), Brandon Lebsock ("Brandon") (collectively the "Lebsock Family"), and their entities L7 Ag, LLC ("L7 AG"), L7 Grain, LLC ("L7 Grain"), L7 Hemp, LLC ("L7 Hemp"), L7 Extractors LLC ("L7 Extractors"), L7 Trading, LLC ("L7 Trading"), and Botanix Equities, LLC d/b/a Lebsock Pharms ("Lebsock Pharms") who all conspired together to deprive HTO of its investment. L7 AG, L7 Grain, L7 Hemp, L7 Extractors, L7 Trading, and Lebsock Pharms shall be referred to collectively as "Lebsock Enterprise." Lebsock Family and Lebsock Enterprise shall be collectively referred to as the "Lebsock Defendants." Plaintiff alleges as follows:

# INTRODUCTION

1.     This litigation arises out of a failed business endeavor and Joint Venture Agreement, dated July 24, 2020 (the "JV Agreement") – attached hereto as **Exhibit 1** – between HTO and L7 AG, the latter of which, despite receiving millions of dollars in cash and assets, has failed and refused to perform *any* of the corresponding obligations L7 AG owed to HTO under the JV Agreement.

2.     Among the other matters identified in the JV Agreement, HTO supplied/delivered to L7 AG (a) proprietary seeds/genetics (the "Genetics") with a stipulated value of $2,362,500.00, and (b) a series of cash payments totaling $1,387,500.00 (the "Cash Payments").

3.     The JV Agreement required L7 AG to make all "efforts to effectuate the joint venture's objectives" which, at a bare minimum, required L7 AG to utilize the Genetics and Cash Payments for the sole benefit of the joint venture and to adhere to L7 AG's duties of loyalty and candor to HTO. Further, under the JV Agreement, L7 AG was specifically precluded from diverting and/or utilizing joint venture assets/opportunities for the benefit of the Lebsock Family and/or the Lebsock Enterprise, to the detriment of the joint venture, including to the detriment of HTO.

4.     L7 AG has failed to account for the location/disposition of the Genetics and the Cash Payments under the JV Agreement and, on information and belief, has diverted and/or utilized joint venture assets/opportunities for the benefit of the Lebsock Family and/or the Lebsock Enterprise, to the detriment of the joint venture, including to the detriment of HTO. The transgressions further described below require the immediate appointment of a receiver to dissolve the joint venture and to perform a thorough accounting to locate HTO's investment funds, the

proprietary Genetics, and the amount of product that HTO was entitled to receive from the Lebsock Family and Lebsock Enterprise as a result of their contractual agreement(s).

## JURISDICTION AND VENUE

5. This is a civil action where the object of the litigation and the parties dispute under the Joint Venture Agreement exceeds $75,000, exclusive of interest and costs, and is between a citizen of the State of Delaware and citizens of the State of Colorado and/or the State of New York. Diversity jurisdiction exists pursuant to 28 U.S.C. §1332.

6. Venue is proper in this District pursuant to 28 U.S.C. § 139 insofar as (a) all Defendants reside in or conduct regular/sustained business within this District, (b) a substantial part of the events or omissions giving rise to this litigation occurred in this District, and (c) the Joint Venture Agreement lays venue in this District.

7. This Court is further authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and as implemented through Rule 57 of the Federal Rules of Civil Procedure.

## PARTIES

8. Plaintiff HTO Holdings, Inc., is a Delaware corporation in good standing, authorized to transact business in the State of Colorado.

9. Defendants Bradley Lebsock, David Wade Lebsock, and Brandon Lebsock are individuals and on information and belief, reside in the State of Colorado.

10. Defendant L7 Ag, LLC is a Colorado limited liability company and, on information and belief, conducts business in the State of Colorado. Further, on information and belief, the member(s) of L7 Ag is/are residents of the State of Colorado.

11. Defendant L7 Grain, LLC is a Colorado limited liability company and, on information and belief, conducts business in the State of Colorado. Further, on information and belief, the member(s) of L7 Grain is/are residents of the State of Colorado.

12. Defendant L7 Hemp, LLC is a Colorado limited liability company and, on information and belief, conducts business in the State of Colorado. Further, on information and belief, the member(s) of L7 Hemp is/are residents of the State of Colorado.

12. Defendant L7 Extractors LLC is a Colorado limited liability company and, on information and belief, conducts business in the State of Colorado. Further, on information and belief, the member(s) of L7 Extractors is/are residents of the State of Colorado.

13. Defendant L7 Trading, LLC is a Colorado limited liability company and, on information and belief, conducts business in the State of Colorado. Further, on information and belief, the member(s) of L7 Trading is/are residents of the State of Colorado.

14. Defendant Botanix Equities, LLC is a New York corporation and, on information and belief, conducts business in the State of Colorado as a Foreign corporation registered with the Colorado Secretary of State. Further, on information and belief, the member(s) of Botanix is/are residents of the State of Colorado.

**FACTUAL BACKGROUND**

15. The Lebsock Family originates from Sterling, Colorado and purport to be generational farmers.

16. The Lebsock Family decided that it would commit its resources to farming industrial hemp. Despite the Lebsock's farming know-how, the Lebsock Family had no ability to grow hemp without monetary support in the form of cash and plants/seeds.

17. The Lebsock Family hatched a plan to cajole HTO into being its benefactor in its scheme to profit from hemp farming.

18. The plan required the Lebsock Family to present themselves to HTO as a fully integrated industrial hemp farming enterprise. To do so, the Lebsock Family formed the Lebsock Enterprise.

19. After forming Lebsock Enterprise, Bradley Lebsock sought out money from the principals of HTO, among others.

20. HTO is well-funded and was performing hemp investment operations in Oregon and Kentucky before meeting Bradley Lebsock. Bradley Lebsock convinced HTO that the Lebsock Family and Lebsock Enterprise would be able to serve as HTO's farming partner for the growth of industrial hemp in Sterling, Colorado.

21. The Lebsock Family and Lebsock Enterprise needed HTO's money for their operations.

22. The Lebsock Family hatched a plan to develop a joint venture with HTO that would result in a long-term relationship whereby the Lebsock Family would take responsibility to farm the hemp on an annual basis and HTO would fund the hemp farming operations.

23. On or about July 24, 2019 HTO and L7 AG (a part of the L7 Enterprise) entered into the JV Agreement.

24. The JV Agreement contemplated that HTO and L7 AG would document their relationship as a joint venture to be called "HTO Colorado" by executing the following series of agreements collectively known as the "JV Transaction Documents":

    a. An Operating Agreement of HTO Colorado with HTO and L7 AG as members ("Operating Agreement") with HTO Colorado intending to pursue business

activities such as hemp cultivation, the sale of harvested hemp, or any other allowable business activities associated with hemp and additionally hold the assets of the JV Agreement;

    b.    A 48 month Farm Lease for farmland of 480 acres controlled by the Lebsock Family and L7 Enterprise ("Farm Lease");

    c.    A Farming Services Agreement between HTO and L7 AG ("Farming Services Agreement");

    d.    A Combine Leasing Agreement between HTO and L7 AG ("Combine Agreement"); and

    e.    The JV Agreement also required HTO to provide the following funds and materials in order to allow for the farming of industrial hemp (collectively the "HTO Undertakings"):

        i.    Hemp seeds, genetics, 2,558 plants which the parties agreed had a value of $2,362,500 (the "Genetics");

        ii.    Cash payments in the total amount of $1,387,000.00 (the "Cash Payments"); and

        iii.    The funding of combines for hemp production in an unspecified amount to be determined at a later date.

25.    The JV Agreement obligated L7 AG to be responsible for all costs associated with hemp farming and the delivery of dried/cured hemp biomass to HTO Colorado.

26.    The JV Agreement provided HTO with unrestricted rights to inspect all farming operations and be present at harvest. Despite this right, HTO was never afforded the level of

transparent access (and L7 AG affirmatively impeded such access/oversight) to the farming operations necessary for HTO to conduct any meaningful inspection of the same.

27. In exchange for the HTO Undertakings, HTO was to receive 50% of the hemp harvested for 2019 along with a percentage associated with the use of HTO funded combines.

28. Despite receiving the benefit of the HTO Undertakings, and the parties' intent and actions taken pursuant to such intent, the JV Transaction Documents were never executed.

29. Upon information and belief, the Defendants harvested Hemp that was grown from the Genetics, seeds, combines, and funds detailed in the HTO Undertakings ("HTO Hemp").

30. Despite harvesting hemp, with the Genetics and Cash Payments provided by HTO being utilized in such harvesting, the Lebsock Family and Lebsock Enterprise have refused to account for the hemp harvested with HTO's Undertakings, specifically such harvested hemp constituting HTO Hemp.

31. Upon information and belief, the Lebsock Defendants have diverted the HTO Undertakings and HTO Hemp to fund its operations.

32. Upon information and belief, the Lebsock Defendants continue to utilize the Genetics provided by HTO as a part of their 2020 hemp cultivation business.

33. On May 21, 2020, HTO notified the L7 AG of its material breaches under the JV Agreement ("Default Notice"). The Default Notice is attached hereto as **Exhibit 2**.

34. On July 22, 2020, having received no satisfactory or adequate response to the Default Notice, HTO notified L7 AG of its termination of the JV Agreement ("Termination Notice"). The Termination Notice is attached as **Exhibit 3**.

35. The Lebsock Family and Lebsock Enterprise are actively selling hemp products and representing to the public that they are in the business of selling and cultivating hemp.

7

36. At the same time, the Lebsock Family and Lebsock Enterprise refuse to account for the HTO Undertakings, the HTO Hemp and other Hemp produced with it, and have concealed the location and use of the HTO Undertakings inside the Lebsock Enterprise.

37. The Lebsock Defendants are, at best, in material breach of the JV Agreement, and, at worst, concocted and executed upon a plan to divest HTO of the funds and product provided by the HTO Undertakings with no intention to ever honor the JV Agreement and operate HTO Colorado as agreed.

38. The Lebsock Family and Lebsock Enterprise took all of HTO's Genetics, Cash Payments, and know-how and utilized all of HTO's Undertakings to stake their businesses without regard to HTO.

39. The Lebsock Family and Lebsock Enterprise knew that the only way to convince HTO to provide funding was to enter into the JV Agreement for HTO Colorado, full well knowing that the Lebsock Defendants never intended to honor the obligations of the JV Agreement.

40. The Lebsock Family's and Lebsock Enterprise's intent to not abide by the JV Agreement and material breaches of the JV Agreement are evidenced by the following particulars that are a part of an ongoing investigation by HTO:

    a. The failure to account for the Cash Payments provided to the Lebsock Defendants;

    b. The active concealment of the HTO Hemp from HTO and the use of Cash Payments from HTO for the Lebsock Defendants' other operations evidenced by Lebsock Enterprise;

    c. The intentional concealment of the Lebsock Defendants' hemp farming operations to preclude HTO from accounting for the HTO Hemp;

   d. The intentional failure to form HTO Colorado which resulted in the inability of HTO to identify the physical assets of the JV Agreement, making it impossible for HTO to seek legal redress;

   e. The failure to properly account for the dried biomass harvested by the Lebsock Defendants in 2019, and within thirty (30) days of its harvest, including the failure to identify/deliver to HTO its portion of the dried hemp biomass under the JV Agreement;

   f. The intentional failure to provide HTO with timely post-harvest Certificates of Analysis ("COA") of the dried biomass harvested by the Lebsock Defendants, detailing the quality/potency of the harvest, including the failure to properly dry and/or bale the harvest, allowing it to degrade over time.

41. As a result of the Lebsock Defendants' failures described herein, HTO has been damaged in an amount no less than $3,750,000.00 with sum certain to be proven at trial.

42. As a result of the termination of the joint venture, the physical assets of the joint venture are obligated to be liquidated and all confidential information provided by HTO is to be returned to HTO.

43. The conduct of the Lebsock Defendants will continue until and unless a receiver is appointed, and, while such conduct continues, HTO cannot be assured that the physical assets of the joint venture are protected from further impermissible or damaging conduct by the Lebsock Defendants.

## FIRST CLAIM FOR RELIEF
**(Declaratory Judgment)**

44.     HTO re-alleges and re-incorporates the above paragraphs by reference as though fully set forth herein.

45.     An actual, present controversy has arisen and now exists between HTO and L7 AG concerning their respective rights and obligations under the Joint Venture Agreement, the "termination" and "dissolution" of the parties' relationship thereunder, and the ancillary relief that should issue regarding the same.

46.     HTO satisfied all conditions precedent under the JV Agreement to enforce the obligations owed by L7 AG herein.

47.     Accordingly, under the facts/circumstances presented, HTO requests the Court declare, among other things:

    a.      That the JV Agreement is terminated, and HTO's and L7 AG's joint venture relationship is terminated in accordance with Articles VI and VII of the JV Agreement;

    b.      That HTO retains all its "accrued rights" and L7 AG retains all its "accrued liabilities" as of the date of termination of the JV Agreement;

    c.      That the joint venture shall be dissolved and all Confidential and/or Intellectual Property of HTO shall be accounted for and returned by L7 AG to HTO, including but not limited to the proprietary Genetics supplied/delivered by HTO to L7 AG in accordance with Articles VIII and IX of the JV Agreement;

    d.      That HTO is entitled to the return of all HTO Undertakings, including but not limited to the Genetics and Cash Payments under the JV Agreement;

      e.      That HTO is entitled to recover its reasonable attorney fees and costs under Article XI, Paragraph 11.11, of the JV Agreement; and

      f.      That L7 AG "waiv[ed] its right to a jury trial in connection with any suit, action, proceeding in connection with any matter relating to" the JV Agreement.

48.    As part of the termination of the JV Agreement and/or the dissolution of the joint venture relationship, HTO will suffer irreparable harm with respect to the further dissipation of the joint venture's assets/property and the HTO Undertakings above. HTO is entitled to injunctive relief that will prevent or limit the harm described herein. Accordingly, HTO requests an injunction that prevents L7 AG, the Lebsock Family, and Lebsock Enterprise from dissipating, transferring, or liquidating any joint venture assets/property and the HTO Undertakings during the pendency of this litigation.

49.    HTO further requests a declaration that it is entitled to all remedies under the JV Agreement and Colorado law, including the appointment of a receiver to perform a full accounting and/or to "liquidate" and "distribute" all joint venture assets/property, as may be appropriate, and in accordance with Article XIII, Paragraph 8.4, of the JV Agreement.

## SECOND CLAIM FOR RELIEF
**(Substantial Breach of Joint Venture Agreement – Rescission)**

50.    Plaintiff re-alleges and re-incorporates the above paragraphs by reference as though fully set forth herein.

51.    L7 AG has refused/failed to perform its obligations to HTO under the JV Agreement from the outset.

52.    L7 AG's multiple breaches of the JV Agreement are material, substantial, and incurable, the injuries/harm caused to HTO is irreparable, and the award of damages would be inadequate, difficult or impossible to assess should the joint venture continue as a going concern.

53. Accordingly, the JV Agreement should be rescinded and HTO should be restored to the positions and assets/property that HTO occupied and possessed before the execution of the JV Agreement.

### THIRD CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

54. Plaintiff re-alleges and re-incorporates the above paragraphs by reference as though fully set forth herein.

55. A fiduciary relationship exists between parties to a joint venture. Each joint venturer has a duty of good faith, loyalty, and candor to make full disclosure on matters concerning the venture.

56. Based on the facts/circumstances detailed above, L7 AG breached its fiduciary duties, duty of good faith, loyalty, and candor to HTO herein, causing damages in an amount to be proven at the time of trial but not less than $3,750,000.00.

### FOURTH CLAIM FOR RELIEF
### (Civil Conspiracy)

57. Plaintiff re-alleges and re-incorporates the above paragraphs by reference as though fully set forth herein.

58. L7 AG, the Lebsock Family, and Lebsock Enterprise (collectively "the Lebsock Conspirators") engaged in a scheme to induce HTO to enter into the JV Agreement, with the express object/goal that HTO would contribute the Genetics and the Cash Payments, ostensibly for the benefit of the joint venture, but in reality for the sole benefit of the Lebsock Conspirators generally.

59. Based on the facts/circumstances detailed above, (a) there was a meeting of the minds among each of the Lebsock Conspirators regarding the objects/goal of the conspiracy, (b) each of the Lebsock Conspirators was aware of the fiduciary and other duties owed by L7 AG to

HTO under the JV Agreement and Colorado law, and (c) each of the Lebsock Conspirators took an active role in assisting L7 AG in breaching those duties and in utilizing the Genetics and Cash Payments for the benefit of each of their separate/collective operations and business endeavors.

60. As a direct and proximate result of this conspiracy, HTO has suffered damages in an amount to be proven at the time of trial but not less than $3,750,000.00.

61. In addition, HTO is entitled to injunctive relief that will prevent or limit the injuries/harm described herein. Accordingly, HTO requests an injunction that prevents the Lebsock Conspirators from further dissipating, transferring, or liquidating any joint venture assets/property and the HTO Undertakings under the JV Agreement during this litigation.

## FIFTH CLAIM FOR RELIEF
**(Unjust Enrichment)**

62. Plaintiff re-alleges and re-incorporates the above paragraphs by reference as though fully set forth herein.

63. At HTO's expense, loss, and injury, the Lebsock Family and Lebsock Enterprise received a substantial benefit – *i.e.,* the Genetics, Cash Payments, *etc.* – under unjust circumstances requiring restitution to HTO.

64. Accordingly, HTO has suffered damages in an amount to be proven at the time of trial but not less than $3,750,000.00.

65. In addition, HTO is entitled to a constructive trust or equitable lien against the assets/interests of the Lebsock Family and Lebsock Enterprise to the extent those assets/interests are traceable to and/or result, directly or indirectly, from the assets/property contributed by HTO and/or that presently exist under the control of the Lebsock Family and Lebsock Enterprise, whether individually or collectively, regardless of the title to those assets/interests.

66. HTO is likewise entitled to injunctive relief that will prevent or limit the injuries/harm described herein. Accordingly, HTO requests an injunction that prevents the Lebsock Family and Lebsock Enterprise from further dissipating, transferring, or liquidating any joint venture assets/property and the HTO Undertakings under the JV Agreement during this litigation.

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. Declaring the parties' respective rights and obligations under the Joint Venture Agreement;
2. Damages in the amount of no less than $3,750,000.00;
3. The imposition of a constructive trust or equitable lien against the assets/interests of Defendants to the extent those assets/interests are traceable to and/or result, directly or indirectly, from the sums and assets contributed by Plaintiff under the Joint Venture Agreement and/or that presently exist under the control of the Defendants, whether individually or collectively, regardless of the title to those assets/interests;
4. That Plaintiff be awarded its reasonable attorneys' fees, together with Plaintiff's costs and disbursements incurred herein, pre-judgment and post-judgment interest to the extent permitted by law; and
5. Any other relief the Court deems just and equitable.

## REQUEST FOR EXPEDITED DETERMINATION

Pursuant to Federal Rule of Civil Procedure 57, Plaintiff respectfully requests a speedy hearing and resolution of its declaratory judgment claim and the equitable/injunctive relief sought herein.

## JURY DEMAND

**Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial on any matters to which such right applies.**

DATED July 24, 2020.

                                        Respectfully submitted,

                                        <u>s/ M. Gabriel McFarland</u>
                                        M. Gabriel McFarland
                                        EVANS & MCFARLAND, LLC
                                        910 13th St., Suite 200
                                        Golden, Colorado 80401
                                        Telephone: 303.279.8300
                                        Email:  gmcfarland@emlawyers.com

                                        ATTORNEYS FOR PLAINTIFF